### PEOPLE *v.* LUMLEY.

1. INTOXICATING LIQUORS—CRIMINAL LAW—MINORS — UNLAWFUL SALE.

> Where respondent owned a building that was occupied by him in his business, being the headquarters of a fishing club, whose members kept liquor stored upon the premises and drank there, and beer was shipped to his place in cases with the owner's name attached, and where the practice in purchasing the liquor was to have the owner sign an order for the beer, and the respondent placed the order with the wholesaler, who held him responsible for the price, and in supplying club members with the liquor it was obtained by means of a service card on which a record of the liquor supplied was kept by a series of punches, respondent controlling and delivering the beer as wanted, he was guilty of furnishing liquor to a female minor who came to the club quarters with a member and two companions, to whom respondent brought in four bottles of beer and glasses for each person, and where all four were present in the parlor, when he brought in the beer, and it was charged or punched on the service card of the member; under the statute (Act No. 160, Pub. Acts 1909) the fact that the club member owned the beer was no excuse.

2. SAME—JOINT OFFENSE.
   That the club member was also guilty did not relieve the respondent from responsibility: there may be a joint furnishing of the liquor.

3. SAME.
   Under section 2, Act No. 160, Pub. Acts 1909, intent is not made an ingredient of the offense and ignorance of the fact that the female was a minor did not constitute a defense. It was his duty to see to it that there were no minors in the party before furnishing them with liquor.

Exceptions before sentence from Jackson; Parkinson, J. Submitted October 28, 1915. (Docket No. 105.) Decided December 22, 1915.

George H. Lumley was convicted of furnishing intoxicating liquor to a minor. Exceptions overruled.

*Nathan E. Bailey,* Prosecuting Attorney, and *M. Grove Hatch,* Assistant Prosecuting Attorney, for the people.

*John F. Henigan,* for respondent.

PERSON, J. Respondent was convicted, under Act No. 160, Pub. Acts 1909, of furnishing beer to one Grace Bassett, as a beverage. The second section of the act reads as follows:

"SEC. 2. It shall not be lawful for any person to sell, furnish, or give to any minor as a beverage any brewed, malt, fermented, spirituous, vinous or intoxicating liquor or any mixture containing any of said liquors."

Upon the trial the respondent testified that a building which he owned, and in which he did business, in the village of Michigan Center, in Jackson county, was the headquarters of a certain club known as the Lakeview Fishing Club. It was, he said, the practice of such members of the club as wished to do so to keep

liquor stored upon the premises and to drink it there.
The beer came to his place in cases with the owner's
name attached, and each case held 24 pints of beer.
The price of such a case of beer to the wholesaler was
$1.    Sometimes, and perhaps usually, the member
signed an order for the beer, and respondent placed
the order with the wholesaler, and was held responsi-
ble by the latter for the price of the case.   The beer
so ordered was kept by the respondent in a room used
for that purpose.   Whenever a member wished any
of the beer in the case with his name attached to it,
he would purchase of respondent what was called a
stock or service card, upon which were 24 places to
be punched.   For this card he would pay respondent
$1.   If the member had himself paid the wholesaler
for the beer, respondent would punch 1 place for each
pint ordered, the respondent keeping the money paid
for the card as a remuneration for his services.   If the
member had not made payment to the wholesaler, re-
spondent would punch 2 places for each pint of beer,
to the effect that the card would be used up when the
member had received 12 pints (in one place he says
10 pints), and he would have to purchase another card
to get the remainder.   In this way respondent would
get enough money for each case to pay the wholesaler,
and to make compensation to himself for his services.
Respondent said that the beer remained under his con-
trol, and that if a member—

"wanted to get beer in the regular way by the use of
the card, he would have to get it from me or my assist-
ant."

In this behalf he also further testified:

"I had the beer there under my control, but he [the
member] couldn't have got any beer until he laid down
a dollar to me, or, rather until he got a stock or service
card and paid for the beer as he got it.   He would have
to pay me for it."

Respondent also testified that on the day in question a member of the club by the name of Ozier came to his place, with a party consisting of three other persons. It is conceded that the persons constituting the party were a Mr. Maloney, Grace Bassett, and her sister, all under the age of 21 years. Ozier and this party went into the room called the parlor, and it is respondent's testimony:

"He [Ozier] came into the kitchen, the adjoining room, and called to me, and said he had a party there and he wanted to get four bottles of his beer. He purchased a stock card. I punched out for the four bottles. Mr. Ozier then left and went into the adjoining room, and later on I took in the four bottles on a tray and left them on the table."

Respondent punched 8 places in the card because Ozier had not paid the wholesaler. Respondent further testified:

"I took glasses with the beer, four of them. The bottles were opened and had a tin stopper with a cork. * * * I put the four glasses and four bottles on the table."

He further says:

"I didn't take particular attention where the girls were or who they were. They might have been sitting around the table, or they might not. I didn't take any particular attention. * * * I just walked in—just as long as placing the tray on the table and walking out. I didn't have any conversation with the parties in there at all. I did not know Maloney, nor either one of the Bassett girls. I had never seen either one of the girls before that I know of."

He further says that Maloney came out into an adjoining room and ordered some sandwiches, and that respondent took the sandwiches into the parlor some 10 minutes after he had taken in the beer, and that then each one of the party had a glass and was drink-

ing. The fact that the girls were in the parlor when respondent took the beer in is not questioned. And it is conceded on the record that Grace Bassett was at the time a minor.

The circuit judge, in his charge to the jury, after reviewing the facts, said to them:

"Assuming this was a club and in that respect legal for the purposes of this case, yet it being designed for the purpose that it was actually accomplishing, a storehouse for the liquor or goods of members, the proprietor should see to it, in my judgment, that parties who cannot lawfully be furnished with intoxicants should not be permitted to be so furnished on his premises."

And he closed his instructions as follows:

"So, gentlemen, I say to you that on the undisputed evidence in this case, that which the defendant concedes and what he has stated on the stand, in my judgment, under the law you ought to find the defendant guilty as charged in the information in this case. I cannot say to you that you must do it, or that you should render a verdict without leaving your seats, because the jury is the judge of the evidence. I see no way, however, how you can avoid complying with the opinion I have expressed as to the law, unless you are able to say you cannot believe Mr. Lumley's concessions and admissions as to what he did, and how you can do that I don't know. Maybe you can. So you may retire and consider of your verdict which, in my judgment, should be a verdict of guilty."

Thereupon, after retiring to their room and considering the matter, the jury rendered a verdict in accordance with the opinion of the circuit judge.

In his brief filed with this court, counsel for respondent says:

"The single point in the case is whether or not, under this statute, Lumley, who delivered the beer in the room where Ozier and the others were, violated this section 2 of Act No. 160 by failing to see to it 'that parties who cannot lawfully be furnished with intoxi-

cants should not be permitted to be so furnished on his premises."

And counsel's contentions in the argument are very well summed up in his propositions:

"That if the jury found that all Lumley did was to deliver Ozier's own beer to Ozier, Lumley would not be guilty," and "that in order to make Lumley guilty he must have done something or had some knowledge or understanding that Ozier intended to deliver the beer to the minor to be drunk as a beverage."

We think that the respondent was unquestionably guilty of the offense charged, under his own admissions. Including Ozier, there were four persons in the party to be supplied with liquor, and respondent intended to supply each one of the four, because he took in not only four bottles but also four glasses. Whether he knew Grace Bassett or not, he produced the liquor, expecting that she would take part in drinking it, inasmuch as he supplied her with a glass for that purpose. He intended to supply liquor to the identical person charged in that behalf in the information, and that person is conceded to have been a minor.

It was not material whether Ozier was the technical owner of the beer or not, and we do not pass upon that question. The respondent says that his own possession of it was such that Ozier could get it, in the regular way, only through himself or his assistant, and could not get it at all except by purchasing from him a stock or service card. The liquor was as much furnished to the minor by the respondent in this case as it would have been by a saloon keeper had the latter set it before her at the request of some third party who paid for it. And that a saloon keeper would be guilty of "furnishing," under such circumstances, has been fully determined by this court. *People* v. *Neumann*, 85 Mich. 98 (48 N. W. 290). That Ozier was also

guilty did not exonerate respondent; there could well be a joint furnishing of the liquor.

Inasmuch as the respondent intended to furnish liquor to the entire party, which included Grace Bassett, it was not an essential part of the offense that he should have known at the time that she was a minor. He does not claim to have been a dealer under the general law regulating the liquor traffic, nor that his house was a place where intoxicating liquors were sold or kept for sale. His offense comes, therefore, within the second section of Act No. 160, Pub. Acts 1909, and intent is not made an ingredient of the offense under that section. *People* v. *Averill*, 179 Mich. 224 (146 N. W. 189). And while the court's instruction that "the proprietor should see to it, in my judgment, that parties who cannot lawfully be furnished with intoxicants should not be permitted to be so furnished on his premises" may have been too broad for universal application, yet it was respondent's duty, under the circumstances of this case, to assure himself that there were no minors among the party before furnishing them with liquor.

The exceptions are overruled, and a court below is advised to proceed to judgment.

BROOKE, C. J., and KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.